UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED GOMEZ,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>M. WEST, et al.,<br><br>　　　　Defendants | Case No. 1:13 cv 01126 GSA PC<br><br>ORDER DISMISSING COMPLAINT AND GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT<br><br>AMENDED COMPLAINT DUE IN THIRTY DAYS |

**I.　　Screening Requirement**

　　Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1]

　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or

---

[1] Plaintiff filed a consent to proceed before a magistrate judge on August 22, 2013 (ECF No. 5).

1

appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.     Plaintiff's Claims

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Corcoran, brings this civil rights action against defendant correctional officials employed by the CDCR at North Kern State Prison. Plaintiff names the following individual defendants: CSP Warden Connie Gipson; Special Agent J. Santos; Senior Special Agent D. Evanilla; CDCR Secretary Beard; Lt. J. Badilla; North Kern State Prison Warden Junious; Chief Deputy Warden Sexton; Sgt. M. West; Correctional Counselor A. Pacillas; Captain Briggs; Appeals Coordinator Neihus. Plaintiff's claims stem from his classification as a gang member and housing in the Administrative Segregation Unit (ASU).

On May 17, 2010, Plaintiff was served with a gang validation package by Defendant West, an Institutional Gang Investigator (IGI). The package listed particular items of evidence

establishing that Plaintiff is an associate of the Mexican Mafia (also known as EME).[2] Plaintiff alleges that on May 18, 2010, prior to interviewing him, Sgt. West concluded that Plaintiff was a member of EME. Plaintiff alleges that he submitted a written rebuttal of the evidence "that disproved all the evidence in the validation package." Plaintiff alleges that, despite his attempts to plead his non-affiliation, Sgt. West told him that "you're getting validated no matter what you say. If I say your with the bizz, then you are. You Surenos are going to learn to mind somebody."

Sgt. West submitted the validation package to the Office of Correctional Safety. Plaintiff alleges that once the package arrived, "Special Agents Santos and Evanilla knowingly and maliciously with the approval of supervisors and administrators approved false, unreliable, discriminatory evidence without giving plaintiff a realistic opportunity to disprove the allegations." Plaintiff alleges that both Santos and Evanilla "doctored" specific items of evidence. Plaintiff was validated by Santos and Evanilla on July 17, 2010.

Plaintiff alleges that at each of his 180 day reviews by administrators, he requested to be released from the ASU and have his false validation reversed. Plaintiff's requests have been denied. Plaintiff asserts "that he is being falsely imprisoned because of CDCR's policy of retaining validated gang associates in the SHU even without evidence of gang activity of any showing of how he threatened the safety and security of the General Population."

---

[2] The specific items of evidence include the following: A CDCR 128B form (Gang Chrono) dated April 18, 2010, authored by Defendant West. This form indicates a list eleven inmate names found in the property of a validated gang associate; A CDCR 128B authored by Defendant West indicating a tattoo on Plaintiff's torso of two lines and three dots, and ancient meso-american symbol representative of the number thirteen and associated with EME; A confidential memorandum dated February 19, 2010, authored by IGI Officer Bonfil indicating a kite that contained information relative to EME. Specifically, that a validated EME member sanctioned a "green light" on Black inmates to be assaulted; A CDCR 115 (Rules Violation Report) Authored by Investigative Services Unit Officer Rizo as a supporting document to the kite referred to above.

3

Plaintiff also alleges that the CDCR's policy of forfeiting an inmate's good time credits because of gang validation is punitive, and effectively extends release dates. Plaintiff also alleges that the use of ethnically based artwork, tattoos and symbols is discriminatory.

On March 28, 2013, Plaintiff was again denied relief at his 180 day review hearing at CSP Corcoran. Plaintiff alleges that the committee conducting the hearing "knowingly and maliciously retained Plaintiff in the SHU and on privilege group D2D status punishing Plaintiff further without due process of law and no disciplinary hearing."

Plaintiff alleges that "he is not now nor ever has been an associate of a prison gang and his validation as such was done in retaliation of him and many other Mexican inmates refusing to be housed with mentally unstable inmates." Plaintiff alleges that his treatment by Defendants has resulted in injury such that he suffers frequent headaches, insomnia, memory loss, severe mood swings, stress, withdrawal and fear of correctional employees. Plaintiff claims this constitutes cruel and unusual punishment in violation of the Eighth Amendment.

A. **Deliberate Indifference – Conditions of Confinement**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)(quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)(citation omitted). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

To the extent that Plaintiff is attempting to pursue an Eighth Amendment claim based on the facts that he was placed in the SHU and that he is being retained in the SHU indefinitely, Plaintiff's claim fails. The indefinite confinement of Plaintiff in segregation does not give rise to

4

a separate claim for relief under the Eighth Amendment. Plaintiff's complaint does not set forth any facts supporting a claim that any of the named defendants knowingly disregarded a substantial risk of harm to his health or safety. In the absence of sufficient facts to support a plausible claim against one or more of the defendants, Plaintiff fails to state a claim.

### B. Due Process

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought. Id. The Due Process Clause does not confer a liberty interest in freedom from state action taken within a prisoner's sentence. Sandin v. Conner, 515 U.S. 472, 480 (1995). However, a state may "create liberty interests which are protected by the Due Process Clause." Sandin, 515 U.S. 483-84. A prisoner has a liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kennan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996)(quoting Sandin, 515 U.S. at 484.[3]

### 1. Gang Validation

The Supreme Court has held that indefinite placement in Ohio's "supermax" facility, where inmates are not eligible for parole consideration, imposed an "atypical and significant hardship within the correctional context." Wilkinson, 545 U.S. at 223-25. Since indefinite placement in California's SHU may render an inmate ineligible for parole consideration, this may create a liberty interest in not being placed indefinitely in the SHU which would entitle prisoners to the

---

[3] The Court notes that Plaintiff is alleging that he has lost time credits due to his gang validation and associated housing. This allegation clearly affects the length of Plaintiff's confinement. When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied, 498 U.S. 1126 (1991).

5

minimal procedural protections upon initial validation and subsequent reviews.  See Ellis v.Cambra, No. 1:02-cv-05646 AWI SMS PC, 2010 WL 4137158, *8 (E.D. Cal. Oct. 19, 2010).

### a.  Validation Process

"It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity."  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).   To that end, California has developed procedures to identify and segregate gang members.  See Cal.Code Regs., tit. 15 § 3378.  To comply with due process, prison officials must provide the inmate with "some notice of the charges against him, and the opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.  Bruce, 351 F.3d at 1287.  Here, Plaintiff was notified of the charges against him, was informed of the evidence indicating his status as a gang member, and was given an opportunity to respond.  That procedure satisfied due process.  Barnett v. Centoni, 31 F.3d 813, 815 (1994).

Plaintiff argues the he verbally informed Defendants that the evidence against him did not establish gang affiliation, and that he provided a written rebuttal that "disproved" his affiliation.  While Plaintiff alleges that his rebuttal evidence was not considered, it is equally plausible that due to the amount of evidence showing gang activity, nothing set forth in the rebuttal was sufficient to overcome the totality of evidence supporting the conclusion that he was a gang associate.  Plaintiff received that procedure which was required under the Fourteenth Amendment. Wilkinson, 545 U.S. at 228-29.  Plaintiff fails to state a cognizable claim based upon the hearing provided.

### b.  Some Evidence

Plaintiff claims that the source items used to validate him as a EME member do not establish some evidence of current gang membership.  In finding that Plaintiff was a gang associate, prison officials relied on gang symbols that were displayed in Plaintiff's tattoo and a kite found in a gang affiliate's cell.

California's decision to classify gang members for placement in SHU is not a disciplinary measure, but is designed to preserve order in the institution and protect inmates and is a matter of

administrative discretion.  Bruce, 351 F.3d at 1287.  Therefore, the decision to place an inmate on indeterminate SHU status based on gang affiliation must be supported by "some evidence." Id.  The evidence relied on must have some indicia of reliability.  Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990).

Under the "some evidence" standard "the relevant question is whether there is any evidence in the record to support the conclusion."  Bruce, 351 F.3d at 1287 (quoting Superintendent v. Hill, 472 U.S. 445, 455-56 (1985)).  The "some evidence" standard sets a low bar consistent with the recognition that the assignment of inmates within the prison system is "essentially a matter of administrative discretion."  Bruce, 351 F.3d at 1287.  A single piece of evidence that has sufficient indicia of reliability can be sufficient to meet the "some evidence" standard.  Id. at 1288.  Federal law does not require that the evidence relied upon, the Court is not to substitute its judgment on matters such as this for the determinations of those charged with the formidable task of running a prison, Zimmerlee v. Keeney, 831 F.3d 183, 186 (9th Cir. 1987).

Regarding Plaintiff's tattoo,  Prison officials have determined that the symbol "3 dots 2 lines- 3 dots 2 bars is a part of the Mayan numerical system and represents the 13th letter ("M"') of the alphabet.  The letter "M" is used by the Surenos (Southern Hispanics) as an identifier to show their loyalty/association to the Mexican Mafia prison gang." (ECF No. 1 at 14).   The tattoo on Plaintiff's torso contains the numerical symbol and the name of a street gang.  (Id. At 6, 14.)  Additionally, the use of the Mayan symbol to identify gang membership is well documented in case law.  Martinez v. Fischer, 2:10-cv-00366 GGH, 2011 WL 4543191, *8 (E.D. Cal. Sept. 28, 2011); Vazquez v. Stainer, 2:09-cv-03029 AHM (SS), 2011 WL 3565056, *2 (C.D. Cal. July 20, 2011); Ruiz v.Fischer, 3:07-cr-00326MHP, 2010 WL 4807052, *2 (N.D. Cal. Nov. 18, 2010); Agullion v.Evans, 2:08-cv-01748 SJO (OP), 2010 WL 2384861, *26 (C.D. Cal. Mar, 15, 2010).  These symbols are sufficient to meet the "some evidence" standard.

The Court finds that there was "some evidence" of Plaintiff's involvement in gang activity, and Plaintiff has failed to state a cognizable claim based on the evidence used to classify him as a gang associate.

### C. <u>Retaliation</u>

Plaintiff alleges that "his validation as such was done in retaliation of him and many other Mexican inmates refusing to be housed with mentally unstable inmates." Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. <u>Rizzo v. Dawson</u>, 778 F.2d 5527, 532 (9th Cir. 1985); see also <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); accord <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

Here, Plaintiff levels a conclusory allegation that his particular validation was done in retaliation for the conduct of other inmates in general. Plaintiff fails to allege any facts to support his claim. As noted above, Plaintiff's allegations indicate that there was some evidence to support his gang validation. The Ninth Circuit has held that mere speculation that defendants acted out of retaliation is not sufficient. <u>Wood v. Yordy</u> (9th Cir. June 3, 2014)(citations omitted). Plaintiff must allege facts indicating that a particular Defendant took adverse action against Plaintiff because of Plaintiff's exercise of protected conduct and that such conduct chilled the exercise of his First Amendment rights. Here, the facts allege indicate that Plaintiff was

8

validated pursuant to process and policy and based on evidence. Such conduct advances a legitimate penological goal. This claim should therefore be dismissed.

### D. Equal Protection

Plaintiff alleges that he was validated pursuant to a "discriminatory" process. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Shakur v. Schiriro, 514 F.3d 878, 891 (9th Cir. 2008). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of plaintiff's membership in a protected class. Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 960, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). Plaintiff has not alleged any facts indicating that he was intentionally discriminated against on the basis of his membership in a protected class or that similarly situated inmates were intentionally treated differently without a rational relationship to a legitimate state purpose. This claim should therefore be dismissed.

### III. Conclusion and Order

The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under section 1983. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff is cautioned that he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick, 500 F.3d at 987-88.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (citations omitted).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;
2. The Clerk's Office shall send to Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;
4. Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so will result in an order striking the amended complaint; and
5. If Plaintiff fails to file an amended complaint, the Court will dismiss this action, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **December 11, 2014**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE

11